AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>PAULO RODRIGUES-FERREIRA<br><br>**Defendant** | )<br>)<br>) Case No. 8:16-MJ-350 (GLF)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of 10/1/2013-6/1/2014 in the county of Franklin in the Northern District of New York, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 371, 8 U.S.C. § 1324(a)(1)(A)(v)(I) & 1324(a)(2)(B)(ii) | Conspiracy to bring illegal aliens to and transport illegal aliens within the United States, and to bring illegal aliens to the United States for the purpose of commercial advantage and private financial gain. Illegal aliens come to, enter, reside and remain nt eth Untied States in violation of law. |

This criminal complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

Kevin Walczak, SA Homeland Security Investigations

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/20/2016

*Judge's signature*

City and State: Plattsburgh, New York

Gary L. Favro, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT

I, Kevin Walczak, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## INTRODUCTION

1.  I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been an HSI Special Agent since May 2009. I am a graduate of the Criminal Investigator program at the Federal Law Enforcement Training Academy and the Immigration and Customs Enforcement Special Agent Training program. I have completed the HSI Asset Forfeiture and Financial Investigations course and the Organized Crime Drug Enforcement Task Force Money Laundering course. During my law enforcement career, I have taken part in several investigations, arrests and seizures, including arrests and seizures involving Human Smuggling Organizations (HSO). My experience, as relevant in this affidavit, includes Human Smuggling Investigations and Financial Investigations in which I have been the lead case agent on the investigation of cross border crimes for financial gain.

2.  As an HSI Special Agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.  I make this affidavit in support of a complaint and arrest warrant for Paulo RODRIGUES-FERREIRA which are based on the below facts which establish probable cause to believe that RODRIGUES-FERREIRA violated federal criminal laws, including 18 U.S.C. § 371, 8 USC 1324(a)(1)(A)(v)(I) and 8 USC 1324(a)(2)(B)(ii), which prohibits bringing into or attempting to bring into the United States certain aliens, for the purpose of commercial advantage and private financial gain, and conspiring to bring certain aliens, and to transport and harbor certain aliens, within the United States.

4.  The statements in this affidavit are based on my investigation, on information provided by other law enforcement officers and personnel, and on my experience and training. I

1

have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that RODRIGUES-FERREIRA violated federal criminal laws including 18 USC 371, and 8 U.S.C. § 1324.

## FACTS ESTABLISHING PROBABLE CAUSE

5. On December 4, 2013, your affiant was contacted by Customs and Border Protection (CBP) Supervisory Border Patrol Agent (SBPA) Corey White. SBPA White notified your affiant that the Burke, New York, Border Patrol station was involved in an Alien Smuggling event which included seven (7) Brazilian Nationals illegally present in the United States and one (1) United States Citizen (USC).

6. Your affiant was presented a summary of the encounter by Burke Border Patrol Agents regarding the apprehension of multiple Brazilian Nationals illegally present in the United States. In sum and substance the summary below was presented to the affiant.

7. On Tuesday, December 3, 2013 Burke Border Patrol Agents intercepted a rented white 2013 Dodge Caravan bearing NY registration GFM8030NTOR near the border. The driver was Alexandre DE MELLO-CORREIA, an illegal alien citizen of Brazil. There was a United States citizen named MENTOR, who was present and six other individuals, all illegal aliens from Brazil. DE MELLO-CORREIA and MENTOR were each prosecuted and convicted of the offense of bringing aliens to the United States for profit. Each of the adult aliens were convicted of an immigration offense.

8. On the same date your affiant interviewed Cooperating Defendant (CD1) who admitted to being part of an organization that smuggles individuals from Canada to the United States. CD1 indicated that he was to be paid money bringing and transporting aliens from the United States/Canada International Border to Somerville, Massachusetts. CD1 stated that he was

2

to be paid by an individual named "NENE." CD1 stated that "NENE" is also a part of the Smuggling Organization. CD1 indicated that "NENE" is paid by an individual named "PAULO."

9. CD1 indicated that he does not have legal status in the United States; however, he has lived in the United States, specifically in Massachusetts, for the past two years. CD1 stated that approximately two years ago (2011) he made arrangements with "PAULO" to enter the United States illegally. CD1 indicated that he paid "PAULO" approximately $12,000 in Brazil to be smuggled into the United States. Subsequently, CD1 was smuggled into the United States from Brazil. .

10. CD1 was shown a photo array of six individuals, one of which included a photograph of Paulo RODRIGUES-FERREIRA. CD1 identified the photo of Paulo RODRIGUES-FERREIRA as being "PAULO." CD1 stated that he was aware that PAULO organized alien smuggling of alien from Brazil into the United States from Canada and that he was working for PAULO when he was smuggling aliens with MENTOR on December 2, 2013 in the Northern District of New York.

11. CD1 indicated that SUBJECT VEHICLE he was operating when he was apprehended by BP was rented at the Logan International Airport, located in East Boston, Massachusetts. A receipt from Thrifty Car Rental located at 100 Tomahawk, Drive which is located adjacent to Logan International Airport was found in the vehicle operated by CD1 when he was apprehended. The receipt bears CD1 name as the individual who rented the vehicle.

12. CD1 stated that he was brought to the airport to rent the vehicle by RODRIGUES-FERREIRA. CD1 stated that RODRIGUES-FERREIRA deposited approximately $500.00-$600.00 USD on CD1 Bank of America debit card. CD1 indicated that RODRIGUES-FERREIRA said the money given to him on his debit card was for travel expenses for bringing the aliens into the United States. CD1 Bank of America debit card was found secreted inside the

3

headliner of the rental vehicle operated by CD1. The Bank of America debit card was found by removing the interior dome light within the rental vehicle and pressed in between the vehicle insulation and headliner.

13. Your affiant sent out and received a Grand Jury subpoena from Bank of America for the account information of CD1. The subpoena return included an account statement indicating that on December 2, 2013, CD1 made a $600 cash deposit at the Assembly Square, Automated Teller Machine (ATM), located in Somerville, MA. A video and still photo of the December 2, 2013 cash deposit was also included in the Grand Jury Subpoena return confirms CD1 as making the $600 cash deposit.

14. CD1 claimed that RODRIGUES-FERREIRA provided him a cellular telephone to be used for the purposes of smuggling aliens into the United States. CD1 indicated that the he spoke with RODRIGUES-FERREIRA on the aforementioned cellphone during smuggling events. CD1 claimed in sum, that the purpose of the conversations with RODRIGUES-FERREIRA during the smuggling events was to provide updates on his location and the status of the smuggling event. CD1 provided the telephone number of (617) 501-6755 as the telephone number used by RODRIGUES-FERREIRA.

15. Interviews of the smuggled aliens were conducted by BPA(I) Myles Staunton and your affiant. An adult male stated the following: he arranged to be smuggled into the United States with an individual named "PAULO". He stated that he never had physical contact with "PAULO". He stated that the price to pay to be smuggled was $6000.00 USD. He claimed that "PAULO" arranged for him to be taken to "PAULO's" house in Somerville, Massachusetts where he would then contact a friend to bring the payment for his smuggling to "PAULO."

16. An interview of an Adult Male #2 was conducted by BPA(I) Myles Staunton and your affiant. AM #2 stated that he arranged for himself and his family to be smuggled into the United States with an individual named "PAULO." AD #2 stated that he never had physical

4

contact with "PAULO." AD #2 stated that the price to pay to be smuggled was $6000.00 USD per person. AD #2 claimed that he was going to have family members in Brazil wire transfer $18,000.00 USD from his bank account in Brazil to a bank account controlled by "PAULO." AD #2 indicated that he and his family were to be taken to Somerville, Massachusetts to meet with "PAULO".

17. On or about May 25, 2014, Members of the USBP, Burke Station apprehended four (4) individuals for violating 18 U.S.C. § 1324. All four (4) of the individuals pled guilty for violating 18 U.S.C. § 1324. One of the individuals, Cooperating Defendant #2 (CD2) indicated at a later time that they were employed by RODRIGUES-FERREIRA for the purpose of bringing illegal aliens into the United States. Specifically, CD2 indicated that they have smuggled illegal aliens into the United States other times and they were paid to do so by RODRIGUES-FERREIRA. CD2 indicated that RODRIGUES-FERREIRA operates in the Boston Massachusetts, area specifically around the townships of Everett, Somerville and Medford.

18. CD2 claimed that RODRIGUES-FERREIRA provided him a cellular telephone to be used for the purposes of smuggling aliens into the United States. CD2 indicated that the he spoke with RODRIGUES-FERREIRA on the aforementioned cellphone during smuggling events. CD2 said that the purpose of the conversations with RODRIGUES-FERREIRA during the smuggling events was to provide updates on his location and the status of the smuggling event. CD2 provided the telephone number of (617) 501-5083 as the telephone number to which he spoke with RODRIGUES-FERREIRA.

19. On March 5, 2015, your affiant received a court order from Sprint for the telephone numbers (617)501-6755 and (617) 501-5083. An analysis of the Sprint cellular data indicated that on or about December 3, 2013, the date that CD1 was arrested for violating Title 8 USC 1324 Alien Smuggling, several telephone calls were made from CD1 seized cell phone to (617) 501-6755. Cellular site data provided by Sprint show that on or about December 3, 2013,

that telephone calls made from (617) 501-6755 were sent/received with the Boston/Woburn MA switch which covers the Boston Metropolitan cellular tower(s). Specifically, individual cell tower data analysis of the calls between CD1 phone and (617) 501-6755 show that the majority of the cell towers that were used during the communications are in a close proximity to 37 Flint St, the residential address (at the time) for RODRIGUES-FERREIRA. Additionally, the Cellular site data provided by Sprint show that on or about May 25, 2014, the date that CD2 was arrested for violating Title 8 USC 1324 Alien Smuggling, several telephone calls were made from CD2's seized cell phone to (617) 501-5083. Cellular site data provided by Sprint show that around May 25, 2013, that telephone calls made from (617) 501-5083 were sent/received with the Boston/Woburn MA switch which covers the Boston Metropolitan cellular tower(s). Specifically, individual cell tower data analysis of the calls between CD2's phone and (617) 501-5083 show that the majority of the cell towers that were used during the communications the townships of Everett, Somerville and Medford.

20. The Cellular site data provided by Sprint included toll records for the phone numbers (617)501-6755 and (617) 501-5083. A common call analysis of the both (617)501-6755 and (617) 501-5083 show multiple common called/dialed telephone numbers. One of the common called/dialed numbers for the two phones included the telephone number 781-588-4937. An analysis from 10/07/2013 to 09/10/2014, shows (617) 501-5053 calling the telephone number 781-588-4937, 360 times, and (617) 501-6755, calling 781-588-4937, 159 times. Open source intelligence checks show Sprint Spectrum as the carrier of 781-588-4937, with the number belonging to an: Estefania, F. A Subpoena return from Sprint for 781-588-4937 details the subscriber as of 1/8/2014 as, Estefania FREITAS, of 50 Broadway, Everett MA, 02149.

21. A query into Social Media website Facebook, indicated that 781-588-4937 is linked to the Facebook profile of Estefania E TIAGO. Open source checks into the Facebook profile of Estefania E TIAGO show that the web address for the profile homepage lists the name

6

Estefania FERRIERA. Estefania FERRIERA is the daughter of Paulo RODRIGUES FERREIRA. Your affiant has viewed the photos from the Estefania E TIAGO Facebook page and compared them with photos from Estefania FERRIERA immigration files and confirmed that Estefania E TIAGO is in fact Estefania FERRIERA, the daughter of Paulo RODRIGUES FERREIRA.

22. On Monday June 13, 2016 PAULO RODRIGUES-FERREIRA was arrested by Homeland Security Investigations in Somerville, Massachusetts. He was advised of his Miranda warnings and interviewed in Portuguese. During the interview PAULO RODRIGUES-FERREIRA stated that he hired individuals to smuggle aliens from Brazil into the United States from Canada in 2013 and 2014. PAULO RODRIGUES-FERREIRA stated that he hired Jose Louis Da Silva to smuggle aliens in October 2013 and that Jose Louis Da Silva did in fact guide seven aliens from Brazil across the border on foot in October 2013. PAULO RODRIGUES-FERREIRA stated that he hire Correira De Mello and Mentor in December 2013 to smuggle aliens into the United States from Canada and that in December 2013 Correira De Mello and Mentor did in fact smuggle seven aliens into the United States from Canada. PAULO RODRIGUES-FERREIRA stated that he hired a man named "Cascau" to smuggle aliens into the United States from Canada in the Northern District of New York and that Cascau did in fact smuggle aliens into the United States in 2014.

## CONCLUSION

1. Based on the facts stated above, there is probable cause to believe that Paulo RODRIGUES-FERREIRA has brought illegal aliens to the United States from Canada, for the purpose of commercial advantage or private financial gain and that he has conspired with others to bring illegal aliens to the United States and transport illegal aliens within the United States, all

7

in violation of 18 U.S.C. § 371, 8 USC 1324(a)(1)(A)(v)(I) and 1324(a)(2)(B)(ii).

_____
Kevin Walczak
Special Agent, HSI
Homeland Security Investigations

Sworn to before me this
20th day of June, 2016

_____
The Honorable Gary Favro
United States Magistrate Judge

8